IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 11, 2013 Session

## WILLARD HARRISON IMAN, JR. v. MEGAN BLANCHFIELD IMAN

**Direct Appeal from the Chancery Court for Montgomery County**
**No. MC CH CV DI 11 48     Laurence M. McMillan, Jr., Chancellor**

_____

**No. M2012-02388-COA-R3-CV - Filed July 16, 2013**

_____

This case involves post-divorce modification of a parenting schedule. Mother sought modification of the schedule after moving to Florida to be nearer to Father and the minor child. The trial court considered the case and modified the schedule to allow Mother more time with the child. Father appeals, arguing that the trial court no longer had jurisdiction to hear the dispute, that the trial court should have declined jurisdiction on the basis of forum *non conveniens*, that Mother failed to prove a material change in circumstances, and that the modification was not in the child's best interests. We affirm the trial court's rulings with regard to jurisdiction, application of the forum *non conveniens* doctrine, and a material change in circumstances. However, because the trial court failed to make a finding that modification was in the child's best interests, we remand to the trial court for the entry of an order containing appropriate findings of fact and conclusions of law as to whether modification is in the child's best interests. Affirmed in part, and remanded.

**Tenn. R. App. P. 3. Appeal as of Right; Judgment of the Chancery Court Affirmed in Part and Remanded**

J. STEVEN STAFFORD, J., delivered the opinion of the Court, in which DAVID R. FARMER, J., and HOLLY M. KIRBY, J., joined.

Sharon T. Massey, Clarksville, Tennessee, for the appellant, Willard Harrison Iman, Jr.

Mark A. Rassas and Julia P. North, Clarksville, Tennessee, for the appellee, Megan Blanchfield Iman.

**OPINION**

**I. Background**

The parties, Willard Harrison Iman, Jr. ("Father") and Megan Blanchfield Iman ("Mother"), have one child. The parties were divorced in 2011 based on the extramarital affair of Mother, as well as the trial court's finding that Mother had brought the child around a registered sex offender. During the pendency of the divorce, Father moved to Florida for his job in the military and Mother was temporarily designated the primary residential parent. During the separation, the parties had enjoyed equal visitation with the child and the court noted that it had gone well. In the trial court's permanent parenting plan, the trial court named Father primary residential parent, allowing the child to move to Florida with Father. The child was to stay with Mother, however, to complete the rest of the school year and would move in the summer. Once the child moved to Florida, Mother would be allowed parenting time with the child on all three-day weekends. Although, at trial, Mother expressed no intention or desire to move, the trial court further noted that "It is the desire of this court for Mother to enjoy equal parenting time with the Father in the event she relocate[s] to the State of Florida." A final decree and permanent parenting plan were entered on December 6, 2011.

After the final order was entered, Mother decided to relocate to Florida. To that end, on March 23, 2012, Mother filed a petition in the trial court to modify the permanent parenting plan. At this time, both Mother and the child resided in Tennessee. Mother sought only equal parenting time, not to be named the primary residential parent of the child. The child moved to Florida as ordered in May 2012. Mother relocated to Florida in June 2012, securing a job as a nurse and appropriate housing approximately two miles from Father's home.

On June 20, 2012, Father filed a Motion to Dismiss for Lack of Jurisdiction, or in the alternative, to find that Tennessee was an inconvenient forum due to all the parties and witnesses now residing in Florida. The parties scheduled court-ordered mediation on July 3, 2012, but Father failed to appear for the mediation. Subsequent mediation proved unsuccessful.

Trial was scheduled for July 7, 2012. However, Father sought a continuance due to a work conflict. The trial court ultimately heard the case on August 7, 2012. At this point, the child had been in Florida for approximately thirteen weeks. The trial court heard testimony from the parties, their babysitter in Tennessee, and the child's counselor.

The child's counselor, Dr. Paige Mullins-Couch, a licensed clinical psychologist, participated in a telephonic deposition prior to trial in this cause. The deposition transcript was submitted to the trial court without objection. In the deposition, the counselor testified that she had seen the child during the divorce and after the final divorce decree was entered. The counselor was chosen from a list of approved providers on Father's insurance. The

counselor testified that although the child was well-adjusted, following Father's move to Florida, the child became upset about being away from either parent for a significant period of time. The counselor further testified that the child expressed sadness and frustration at not getting to see either parent. Specifically, the counselor testified that the child misses Mother when he is with Father and that the child misses Father when he is with Mother. Based on the child's reactions, the counselor testified that she believed it was in the child's best interest to spend equal amounts of time with both parents. The counselor further testified that her opinion was in line with the child's expressed preference. According to the counselor, both Mother and Father acknowledged that the court was likely to allow equal parenting time if Mother moved to Florida. Indeed, the counselor expressed surprise that the issue of equal parenting time was contested by Father.

Father, testified, however to certain problems that had occurred after the entry of the final divorce decree and permanent parenting plan. Both parents took issue with the other parent's significant other spending any time with the child. In addition, Father testified that Mother limited Father's time with the child on Father's day, instead taking the child to the beach with her boyfriend. Mother explained that based on the court's parenting plan in place at the time, Father's Day was not awarded to Father. Mother further testified she had tried to negotiate with Father to modify the plan so that he would have the child on Father's Day, but that Father refused to agree to any modification. Father also testified that Mother lied to Father about the date of the three-day weekend for Martin Luther King, Jr. Day, as Father was to receive all three-day weekends with the child, which ultimately prevented him from seeing the child on that weekend. Father also testified about one incident in which Mother called the police on Father after he requested to keep the child one extra night during his visitation.

Mother, in contrast, testified that Father never deprived her of allotted parenting time. Mother further testified that she had secured employment in Florida and worked a schedule similar to the one she had worked when she had lived in Tennessee. According to Mother, she "self-schedules" her work, meaning that she is able to choose which days per week that she will work. However, Mother must work some weekdays and some weekend days every week. Finally, Mother testified that the child was a good student during the time she had primary custody of him and that he flourished under her care. Father, however, pointed out that the child had always been a good student throughout the marriage and that his grades took a slight downturn during the time after Father moved to Florida and Mother was spending the majority of time with the child.

The trial court entered a Memorandum Opinion on October 11, 2012. The trial court first declined to dismiss the case, despite Father's arguments regarding the trial court's alleged lack of subject matter jurisdiction and the doctrine of forum *non conveniens*. The

trial court further found that Mother's move to Florida was a material change in circumstances and modified the parenting plan to allow for the parties to have equal visitation with the child, on an alternating weekly basis. The primary residential parent was not altered. Thus, the parties were each awarded 182.5 days per year with the child, on an alternating weekly basis. The final order was entered on October 22, 2012. Father appeals.

## II. Issues Presented

Father raises three issues on appeal, as restated from his brief:

1.   Whether the trial court abused its discretion in failing to dismiss based on the application of the Uniform Child Custody Jurisdiction and Enforcement Act and Forum *Non Conveniens*?
2.   Whether the trial court erred in finding that a material change in circumstances existed that justified modifying the parenting plan?
3.   Whether the trial court erred in finding that it was in the best interest of the child to be divided on a rotating weekly basis?

## III. Analysis

### A. Jurisdiction

### 1. Subject Matter Jurisdiction

The first issue to be resolved in this case is whether the trial court had subject matter jurisdiction pursuant to the Uniform Custody Jurisdiction and Enforcement Act ("UCCJEA").The UCCJEA is a detailed jurisdictional Act that has been adopted, in one form or another, in all fifty states. *Staats v. McKinnon*, 206 S.W.3d 532, 545 (Tenn. Ct. App. 2006). It was designed to establish uniform national standards for the initial entry, enforcement, and modification of child custody orders and to eliminate those difficult situations where, after one or more parties to a domestic dispute have moved from one state to another, the courts of the different states claim the authority to issue contradictory orders. *Staats*, 206 S.W.3d at 544.

Whether a court has jurisdiction is a question of law, and we will review a trial court's ruling on this issue *de novo*, according it no presumption of correctness. *Button v. Waite*, 208 S.W.3d 366, 369 (Tenn. 2006) (citing *State v. Cawood*, 134 S.W .3d 159, 163 (Tenn. 2004)). We also review questions of statutory interpretation *de novo*, with no presumption of correctness given to the trial court. *Button*, 208 S.W.3d at 369 (citing *State v. Collins*, 166 S.W.3d 721, 725 (Tenn. 2005)).

-4-

Tennessee's version of the UCCJEA is codified at Tennessee Code Annotated Section 36-6-201 *et seq*. It is undisputed that the trial court in this case made the initial custody determination regarding the child at issue. Under the UCCJEA, the court that made an initial custody determination retains exclusive, continuing jurisdiction over the matter unless certain contingencies are met. Tenn. Code. Ann. § 36-6-217(a). Tennessee's version of the UCCJEA provides:

> (a) Except as otherwise provided in § 36-6-219, a court of this state which has made a child-custody determination consistent with this part has exclusive, continuing jurisdiction over the determination until:
>
> (1) A court of this state determines that neither the child, nor the child and one (1) parent, nor the child and a person acting as a parent have a significant connection with this state and that substantial evidence is no longer available in this state concerning the child's care, protection, training, and personal relationships; or
> (2) A court of this state or a court of another state determines that the child, the child's parents, and any person acting as a parent do not presently reside in this state.

Tenn. Code. Ann. § 36-6-217(a). Thus, the UCCJEA gives the court that made the initial custody decision the authority to determine when its exclusive, continuing authority over custody has ended. This court has characterized that authority as "a right of first refusal." ***Jones v. Taylor***, No. M2005-02772-COA-R10-CV, 2006 WL 2450273, at *7 (Tenn. Ct. App. Aug. 21, 2006); ***Cliburn v. Bergeron***, Nos. M2002-01386-COA-R3-CV, M2001-03157-COA-R3-CV, 2002 WL 31890868, at *8 (Tenn. Ct. App. Dec. 31, 2002). "Such a formulation implies that the trial court can exercise a certain degree of discretion when determining whether to retain or to relinquish jurisdiction of a custody matter when another state is also a legitimate candidate for the exercise of jurisdiction." ***Conover v. Conover***, No. M2009-01856-COA-R3-CV, 2010 WL 3420548, at *5 (Tenn. Ct. App. Aug. 31, 2010).

Father argues that the trial court lost exclusive, continuing jurisdiction because neither he, the child, nor Mother resided in the state at the time of the trial. Mother argues, however, that the Official Comment to Tennessee Code Annotated Section 36-6-217 provides that: "Jurisdiction attaches at the commencement of a proceeding. If State A had jurisdiction under this section at the time a modification proceeding was commenced there, it would not be lost by all parties moving out of the State prior to the conclusion of proceeding." It is undisputed

-5-

that Mother commenced her modification proceeding while both she and the child still resided in Tennessee.

We agree with Mother. The UCCJEA provides that where there is a dispute about the proper construction of any section of the UCCJEA, the official comments "shall constitute evidence of the purposes and policies underlying such sections . . . ." Tenn. Code Ann. § 36-6-203. This Court has previously relied on the Official Comments in interpreting the provisions in the UCCJEA regarding exclusive, continuing jurisdiction. *See In re Marquise T.G.*, No. M2011-00809-COA-R3-JV, 2012 WL 1825766, at *5 (Tenn. Ct. App. May 18, 2012); *Conover*, 2010 WL 3420548, at *4; *Highfill v. Moody*, No. W2009-01715-COA-R3-CV, 2010 WL 2075698, at *5 & n.4 (Tenn. Ct. App., May 25, 2010); *Cliburn*, 2002 WL 31890868, at *8. Therefore, we conclude that the question of jurisdiction is decided at the time of commencement of the proceeding. This holding is in accord with our established precedent. *See In re J.B.W.*, 2007 WL 4562885, at *3 (Tenn. Ct. App. Dec. 27, 2007) (holding that "[t]he trial court did not lose subject matter jurisdiction over the petition just because the parties moved after the complaint was filed"); *Staats*, 206 S.W.3d at 549 (holding that jurisdiction in a UCCJEA case attaches at the commencement of a proceeding). Indeed, this Court has held that "[c]hanges in circumstances occurring after [the commencement of the proceeding] have no relevance with respect to jurisdiction over the petition to modify." *Busler v. Lee*, No. M2011-01893-COA-R3-CV, 2012 WL 1799027, at *3 (Tenn. Ct. App, May 17, 2012). Because both Mother and the child lived in Tennessee at the commencement of the proceeding, the trial court did not lose exclusive, continuing jurisdiction merely due to the fact that all the parties moved to Florida while Mother's modification request was pending.

Likewise, we conclude that at the time of the commencement of this proceeding, Mother and the child maintained a significant connection with Tennessee and substantial evidence, in the form of both Mother's and the Tennessee babysitter's testimony was available in Tennessee. The official comments to section 36-6-217 explain that:

> [E]ven if the child has acquired a new home state, the original decree state retains exclusive, continuing jurisdiction, so long as the general requisites of the substantial jurisdiction provisions are met. If the relationship between the child and the person remaining in the state with exclusive, continuing jurisdiction becomes so attenuated that the court could no longer find significant connections and substantial evidence, jurisdiction would no longer exist.

Consistent with the official comment, this court has interpreted section 36-6-217(a)(1) to

mean that "the Tennessee court making the original determination retains jurisdiction until it determines that neither the child nor the child and one parent have a significant connection with Tennessee and that substantial evidence relevant to the child's best interest is no longer available in Tennessee." *Cliburn*, 2002 WL 31890868, at *9. At the time Mother commenced this proceeding, both Mother and the child were residing in Tennessee and spending substantial amounts of time there. At the time Mother filed her petition, the child was still attending school in Tennessee and was only traveling to Florida to visit Father on holidays. Indeed, after a dispute with Mother regarding the child flying alone to Florida, the trial court clarified its order that Father should travel to Tennessee to visit with the child on three-day weekends. Accordingly, we conclude that the trial court properly exercised its discretion to retain jurisdiction of this matter pursuant to the UCCJEA.

## 2. Forum Non Conveniens

Father next argues that even if the trial court retained jurisdiction pursuant to the UCCJEA, the trial court should have elected not to consider this dispute based on the doctrine of forum *non conveniens*. Even if a court has exclusive, continuing jurisdiction, the UCCJEA allows the court to decline to exercise that jurisdiction "at any time if it determines that it is an inconvenient forum under the circumstances and that a court of another state is a more appropriate forum." Tenn. Code Ann. § 36-6-222(a); *In re B.N.W.*, No. M2004-02710-COA-R3-JV, 2005 WL 3487792, at *16 (Tenn. Ct. App. Dec. 20, 2005). Invoking the doctrine of forum *non conveniens*, however, "is a drastic remedy to be exercised with caution and restraint." 20 Am. Jur. 2d Courts § 116.  Our review with respect to a trial court's decision to decline to exercise jurisdiction under the inconvenient forum provisions is, therefore, limited to determining whether the trial court abused its discretion. *In re J.B.W.*, M2007-02541-COA-R9-CV, 2007 WL 4562885, at *3 (Tenn. Ct. App. Dec. 27, 2007); *In re Bridgestone/Firestone*, 138 S.W.3d 202, 205 (Tenn. Ct. App. 2003). As our Supreme Court has explained,

> When no error in the trial court's ruling is evident from the record, the trial court's ruling must stand. This maxim has special significance in cases reviewed under the abuse of discretion standard. The abuse of discretion standard recognizes that the trial court is in a better position than the appellate court to make certain judgments. The abuse of discretion standard does not require a trial court to render an ideal order . . . to withstand reversal. Reversal should not result simply because the appellate court found a "better" resolution. *See State v. Franklin*, 714 S.W.2d 252, 258 (Tenn. 1986) ("appellate court should not redetermine in retrospect and on a cold record how

the case could have been better tried"); *cf.* ***State v. Pappas***, 754 S.W.2d 620, 625 (Tenn. Crim. App. 1987) (affirming trial court's ruling under abuse of discretion standard while noting that action contrary to action taken by the trial court was the better practice); ***Bradford v. Bradford***, 51 Tenn. App. 101, 364 S.W.2d 509, 512–13 (1962) (same). An abuse of discretion can be found only when the trial court's ruling falls outside the spectrum of rulings that might reasonably result from an application of the correct legal standards to the evidence found in the record. See, e.g., ***State ex. rel Vaughn v. Kaatrude,*** 21 S.W.3d 244, 248 (Tenn. Ct. App. 2000).

***Eldridge v. Eldridge***, 42 S.W.3d 82, 88 (Tenn. 2001).

In order to determine whether Tennessee is an inconvenient forum, the trial court is directed to consider Tennessee Code Annotated Section 36-6-222(b), which provides, in pertinent part:

> (b) Before determining whether it is an inconvenient forum, a court of this state shall consider whether it is appropriate for a court of another state to exercise jurisdiction. For this purpose, the court shall allow the parties to submit information and shall consider all relevant factors, including:
>
> (1) The length of time the child has resided outside this state;
> (2) The distance between the court in this state and the court in the state that would assume jurisdiction;
> (3) The relative financial circumstances of the parties;
> (4) Any agreement of the parties as to which state should assume jurisdiction;
> (5) The nature and location of the evidence required to resolve the pending litigation, including testimony of the child;
> (6) The ability of the court of each state to decide the issue expeditiously and the procedures necessary to present the evidence;
> (7) Whether domestic violence has occurred and is likely to continue in the future and which state could best protect the parties and the child; and
> (8) The familiarity of the court of each state with the facts and issues in the pending litigation.

With regard to the first factor, the child moved to Florida in May of 2012, when he was eight years old. *See* Tenn. Code Ann. § 36-6-222(b)(1). Thus, at the time of trial on August 7, 2012, the child had lived in Florida for approximately thirteen weeks. In contrast, the child had lived in Tennessee at least from prior to the divorce trial in October 2011 to May 2012 when he moved to live with Father in Florida, a period of approximately eight months or more.[1] Thus, Tennessee had far more significant contact with the child, even after the entry of the permanent parenting plan that Mother sought to modify.

While Florida is a significant distance from the trial court in Tennessee, the parties were able to participate in mediation and appear at trial in this cause. *See* Tenn. Code Ann. § 36-6-222(b)(2). In addition, there is no evidence in the record regarding the relative financial circumstances of the parties, nor was there any agreement between the parties to seek modification of the trial court's order in another state. *See* Tenn. Code Ann. § 36-6-222(b)(3)&(4). With regard to the evidence concerning the modification, Father submits that he was unable to present the testimony of the child's babysitter in Florida and contends that evidence regarding the child's school was in Florida. *See* Tenn. Code Ann. § 36-6-222(b)(5). The location and residence of a witness may be an important consideration in determining whether to apply the doctrine of forum *non conveniens*:

> A court may decline jurisdiction under the doctrine of forum *non conveniens* where the witnesses reside out of state, particularly where the event occurred in the state of the witnesses' residence. Thus, among the private-interest factors weighing in favor of a change of forum are those that make the trial and the enforceability of the ensuing judgment expeditious and relatively inexpensive, such as the ease of access to the sources of proof, the cost of obtaining the attendance of the witnesses, and the availability of compulsory process for the attendance of unwilling witnesses. However, a party's speculative allegation that there may exist out-of-state witnesses not subject to compulsory process by the forum state is not sufficient in itself to support dismissal of the action on the ground of forum *non conveniens*.

20 Am. Jur. 2d Courts § 122. Nothing in either Father's brief, or in the trial court record suggests, however, that the child's baby sitter was an "unwilling" witness or that the parties were unable to obtain her testimony telephonically, as was the case with the child's

---

[1] It is unclear from the record when the parties began to reside in Tennessee. The record shows that parties were living in North Carolina as late at 2007, but does not state when the parties moved to Tennessee.

counselor. In addition, although Father asserts that the child's school records were in Florida at the time of trial, we note that the trial in this case took place in July 2012 after the child moved from Tennessee at the end of the school year. Accordingly, we are unable to discern the value of any Florida school records, if they exist, that were unable to be produced at trial. Indeed, Mother produced documents from the child's school in Tennessee. No documents from any schools in Florida, which would be readily available to Father if in existence, were produced by Father at trial. Thus, these factors do not support Father's argument that the trial court abused its discretion in declining to dismiss this case on the basis of forum *non conveniens*.

In addition, the remaining applicable factors support the trial court's decision to retain jurisdiction of this case. First, the trial court is very familiar with the parties and the child in this case, having presided over the parties divorce less than a year prior to the modification hearing. *See* Tenn. Code Ann. § 36-6-222(b)(8). Moreover, nothing in the record suggests that the Tennessee Court was unable to decide this issue expeditiously. *See* Tenn. Code Ann. § 36-6-222(b)(7). Indeed, Mother's petition was filed at the end March of 2012 and was heard a short three months later. Evidence in the record also suggests that trial was delayed for that short period of time due to Father's work schedule and his failure to appear at the parties' first mediation. In addition, nothing in the record suggests that Florida courts could have heard this case more expeditiously or that Florida courts have better "procedures necessary to present the evidence." *Id.* Thus, these factors support the trial court's decision to decline Father's request to dismiss the case under the doctrine of forum *non conveniens*. Based on the foregoing, we conclude that the trial court did not abuse its discretion in denying Father's Motion to Dismiss Mother's Petition for Modification on the basis of forum *non conveniens*.

## B. Parenting Plan

We next turn to Father's contention that Mother failed to prove a material change in circumstances and that modification was not in the child's best interest. We review the trial court's findings of fact on this issue *de novo* with a presumption that the trial court's findings of fact are correct unless the evidence preponderates otherwise. ***Kendrick***, 90 S.W.3d at 569; ***Nichols v. Nichols***, 792 S.W.2d 713, 716 (Tenn. 1990). A trial court's conclusions of law are subject to a *de novo* review with no presumption of correctness. ***Nelson***, 66 S.W.3d at 901 (citing ***Ganzevoort v. Russell***, 949 S.W.2d 293, 296 (Tenn. 1997)). In addition, we are reluctant to second-guess a trial court's determination regarding parenting schedules. ***Parker v. Parker***, 986 S.W.2d 557, 563 (Tenn. 1999). "Trial courts have broad discretion in devising permanent parenting plans and designating the primary residential parent. In reaching such decisions the courts should consider the unique circumstances of each case." ***Burton v. Burton***, No. E2007-02904-COA-R3-CV, 2009 WL 302301, at *1 (Tenn. Ct. App. Feb. 9,

2009) (citing *Parker*, 986 S.W.2d at 563); *see also* *Nelson v. Nelson*, 66 S.W.3d 896, 901 (Tenn. Ct. App. 2001). Furthermore, it is not the role of the appellate courts to "tweak [parenting plans] . . . in the hopes of achieving a more reasonable result than the trial court." *Eldridge v. Eldridge*, 42 S.W.3d 82, 88 (Tenn. 2001). Because "'the details of custody and visitation with children are peculiarly within the broad discretion of the trial judge,'" we review issues of parenting time for an abuse of discretion. *Eldridge*, 42 S.W.3d at 85 (quoting *Suttles v. Suttles*, 748 S .W.2d 427, 429 (Tenn. 1998)). "[A]ppellate courts will decline to disturb a parenting plan fashioned by a trial court unless that decision is based on application of an incorrect legal standard, is against logic or reasoning, or is not supported by a preponderance of the evidence." *Cummings v. Cummings*, No. M2003-00086-COA-R3-CV, 2004 WL 2346000, at \*5 (Tenn. Ct. App. Oct. 15, 2004).

### 1. Material Change in Circumstances

The threshold issue in proceedings to modify a parenting plan is whether a material change in circumstances affecting the child's best interest has occurred since the adoption of the existing parenting plan. Tenn. Code Ann. § 36-6-101(a)(2)(C); *see* *Kendrick v. Shoemake*, 90 S.W.3d 566, 570 (Tenn. 2002). After making the finding that a material change of circumstances has occurred, the court proceeds to make a fresh determination of the best interest of the child. *Curtis v. Hill*, 215 S.W.3d 836, 840 (Tenn. Ct. App. 2006)*; Kendrick*, 90 S.W.3d at 569. For purposes of modification of the residential parenting schedule, the petitioner has the burden to prove by a preponderance of the evidence a material change of circumstance, "which may include, but is not limited to, significant changes in the needs of the child over time . . . failure to adhere to the parenting plan; or other circumstances making a change in the residential parenting time in the best interest of the child." Tenn. Code Ann. § 36-6-101(a)(2)(C). The statute regarding changes to a residential parenting schedule "sets a very low threshold for establishing a material change of circumstances. Indeed, merely showing that the existing arrangement has proven unworkable for the parties is sufficient to satisfy the material change of circumstances test." *Rose v. Lashlee*, No. M2005-00361-COA-R3-CV, 2006 WL 2390980, at \*3, n.3 (Tenn. Ct. App. Aug. 18, 2006) (citing *Rushing v. Rushing*, No. W2003-01413-COA-CV, 2004 WL 2439309, at \*6 (Tenn. Ct. App. Oct. 27, 2004); *Turner v. Purvis*, No. M2002-00023-COA-R3-CV, 2003 WL 1826223, at \*4 (Tenn. Ct. App. Apr. 9, 2003)).

Father argues that the trial court erred in finding a material change in circumstances justifying an alteration of the parenting schedule because, according to him, Mother's move to Florida was anticipated by the trial court at the time the permanent parenting plan was entered. We respectfully disagree. From the trial court's order, it appears that although the trial court stated that its desire was for Mother to move to Florida to have equal parenting time with the child, the trial court actually believed that Mother intended to move to New

York, not Florida. Indeed, the trial court's memorandum opinion, which was entered shortly after the divorce trial, states: "The Mother claims that she wishes to stay in Clarksville, Tennessee; although there was proof at trial that Mother's desire to stay in Clarksville was disingenuous and that she actually intends to relocate to the State of New York where she grew up following the divorce." Thus, the trial court found that the evidence at trial tended to show that Mother intended to move to New York, rather than Florida.

The trial court's statement of its desire that Mother should move to Florida in order to gain equal parenting time with the child likewise does not deprive her of using the move as a material change in circumstances for purposes of modifying the parenting schedule. A similar argument was made in **Kraus v. Thomas**, 2013 WL 2612458 (Tenn. Ct. App. June 7, 2013), where the trial court encouraged the father to attend counseling, which could result in him "earn[ing]" more visitation time with his child. In rejecting the argument that Father's successful completion of counseling was not reasonably anticipated, this Court stated:

> The trial court stated that obtaining counseling may help Father "earn" more parenting time in the future, thus, it could be argued in a future hearing that successfully completing counseling was reasonably anticipated. If that occurred, Father may be precluded from asserting it constituted a substantial and material change of circumstance in order to obtain more parenting time. *See* Tenn. Code Ann. § 36-6-101(a)(2)(B). Therefore, it is important to note that this well-intended statement by the trial court should not be construed as "reasonably anticipated" and, thus, impede Father from petitioning for additional parenting time based upon a substantial and material change of circumstance. We made a similar observation in **Duke v. Duke**, No. M2009-02401-COA-R3-CV, 2012 WL 1971144, at *3–4 (Tenn. Ct. App. June 1, 2012) (perm. app. denied. Oct. 18, 2012), wherein this court was concerned that a father who struggled with addiction and was encouraged by the trial court to achieve sobriety in order to obtain additional parenting time, would be unable to assert his sobriety constituted a substantial and material change. We noted that should the father become sober, the fact that the trial court reasonably anticipated that sobriety would not prevent an otherwise meritorious petition for modification pursuant to Tennessee Code Annotated § 36-6-101(a)(2)(B). [**Duke**, 2012 WL1971144,] at *4.

***Kraus***, 2013 WL 2612458, at \*4, n.5; *see also **Crockett v. Hogan***, No. M2005-01788-COA-R3CV, 2007 WL 2330857, at \*3 n.4 (Tenn. Ct. App. Aug. 14, 2007) ("The fact that a circumstance might have been foreseeable when the decree sought to be modified was entered does not, by itself, prevent a finding of change in circumstances.") (citing ***Boyer v. Heimermann***, No. M2006-01566-COA-R3-CV, 2007 WL 969408, at \*5 (Tenn. Ct. App. Mar. 30, 2007)). Thus, the trial court's statement encouraging Mother to move to Florida is not a proper basis to conclude that Mother's move was reasonably anticipated at the time the final decree and permanent parenting plan were entered.

Although not argued by Father in his brief, we note that there is law in Tennessee that states: "In situations where one parent is moving, the law in Tennessee states that a move, in and of itself, does not constitute a material change in circumstances." ***Woolman v. Woolman***, No. M2000-02346-COA-R3-CV, 2001 WL 1660714, at \*5 (Tenn. Ct. App., Dec. 28, 2001)(citing ***Adelsperger v. Adelsperger***, 970 S.W.2d 482, 486 (Tenn. Ct. App. 1998)). These cases, however, generally concern a change in a custody order or a petition by the primary residential parent to move out of state, rather than a mere change in a parenting schedule motivated by the alternative residential parent's move. *See **Taylor v. Taylor***, 849 S.W.2d 319, 332 (Tenn. 1993) (holding that "removal is not, in and of itself, a change of circumstances sufficient to justify modification of the ***custody*** order") (emphasis added); ***Woolman***, 2001 WL 1660714, at \*5 (concerning a change in custody); ***Adelsperger***, 970 S.W.2d at 486 (concerning a change in custody). Indeed, the Parental Relocation Statute, Tennessee Code Annotated Section 36-6-108, which governs relocation of a parent spending intervals of time with a child, specifically states that: "Nothing in this section shall prohibit either parent from petitioning the court at any time to address issues, such as, but not limited to, ***visitation,*** other than a change of custody related to the move." Tenn. Code Ann. § 36-6-108(g) (emphasis added). Mother's petition only requested that the parties' parenting schedule be modified, not that she be named primary residential parent. Thus, the Parental Relocation Statute does not prevent Mother from seeking modification of the existing parenting schedule on the basis of her move.

From the totality of the evidence in the record, we conclude that the evidence does not preponderate against the trial court's finding that a material change in circumstances occurred affecting the child's best interests. The trial court's previous parenting schedule gave Father all the time with the child other than three-day weekends, which would go to Mother. At the time of trial, this was a reasonable schedule given the distance between Tennessee and Father's home in Florida. However, once Mother moved to Florida, mere miles away from Father's home, the previous impediments to her parenting time, such as the distance and the expense of travel, were no longer present. Tennessee Code Annotated Section 36-6-101(a)(2)(C) expressly contemplates that "significant changes in the parent's living or working condition that significantly affect parenting" will constitute material

changes in circumstances for purposes of modifying a parenting schedule. In addition, as previously stated, in order to modify visitation, Mother must meet a "very low" threshold to prove a material change in circumstances. *See Rose v. Lashlee*, M2005-00361-COA-R3-CV, 2006 WL 2390980, at *3 n.3 (Tenn. Ct. App. Aug. 18, 2006) Mother's living and working conditions were significantly changed by her move to Florida to be nearer to the child. Mother's move also allows Mother to more easily visit with the child on a more regular basis, without the expense of transporting herself or the child hundreds of miles. Accordingly, the trial court did not err in finding, based on the particular facts of this case, that Mother's move, and her resulting ability to have more visitation with the child without major expense, constituted a material change in circumstances affecting the best interest of the child.

## 2. Best Interests

Once the court determines that substantial and material changes in circumstances occurred that affect the child's best interests, the court must then determine whether modification of the parenting plan is in the child's best interests and, if so, to fashion a plan that is in the child's best interests. *Kendrick*, 90 S.W.3d at 570. In order to determine whether modification of an existing parenting plan is in a child's best interest, the trial court is directed to consider the factor's contained in Tennessee Code Annotated Section 36-6-404(b). *See* Tenn. Code Ann. § 36-6-405 (" The process established by § 36-6-404(b) shall be used to establish an amended permanent parenting plan . . . ."). These factors include:

> (1) The parent's ability to instruct, inspire, and encourage the child to prepare for a life of service, and to compete successfully in the society that the child faces as an adult;
> (2) The relative strength, nature, and stability of the child's relationship with each parent, including whether a parent has taken greater responsibility for performing parenting responsibilities relating to the daily needs of the child;
> (3) The willingness and ability of each of the parents to facilitate and encourage a close and continuing parent-child relationship between the child and the other parent, consistent with the best interests of the child;
> (4) Willful refusal to attend a court-ordered parent education seminar may be considered by the court as evidence of that parent's lack of good faith in these proceedings;
> (5) The disposition of each parent to provide the child with food, clothing, medical care, education and other necessary care;
> (6) The degree to which a parent has been the primary caregiver, defined as the parent who has taken the greater responsibility for

-14-

performing parental responsibilities;

(7) The love, affection, and emotional ties existing between each parent and the child;

(8) The emotional needs and developmental level of the child;

(9) The character and physical and emotional fitness of each parent as it relates to each parent's ability to parent or the welfare of the child;

(10) The child's interaction and interrelationships with siblings and with significant adults, as well as the child's involvement with the child's physical surroundings, school, or other significant activities;

(11) The importance of continuity in the child's life and the length of time the child has lived in a stable, satisfactory environment;

(12) Evidence of physical or emotional abuse to the child, to the other parent or to any other person;

(13) The character and behavior of any other person who resides in or frequents the home of a parent and such person's interactions with the child;

(14) The reasonable preference of the child if twelve (12) years of age or older. The court may hear the preference of a younger child upon request. The preference of older children should normally be given greater weight than those of younger children;

(15) Each parent's employment schedule, and the court may make accommodations consistent with those schedules; and

(16) Any other factors deemed relevant by the court.

Tenn. Code Ann. § 36-6-404(b).

"[W]hile the statute requires the trial court to consider all the applicable factors [in determining best interest], there is no statutory requirement that the court list every applicable factor along with its conclusion as to how that particular factor impacted the overall custody determination." *Murray v. Murray*, No. M2009-01576-COA-R3-CV, 2010 WL 3852218, at *8 (Tenn. Ct. App. Sept. 28, 2010). [2] Moreover, this Court has encouraged trial courts to

[2] This Court has previously expressed concern that the case law holding that trial judges need not articulate the factors regarding a child's best interest appears to conflict with the intent of Tennessee Rule of Civil Procedure 52.01. *In re Connor S.L.*, 2012 WL 5462839, at *7 n. 6 (citing *In re Elaina M.*, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 n. 13 (Tenn. Ct. App. Oct. 25, 2011)).

(continued...)

"be as precise as possible in making child custody findings" in order to facilitate meaningful appellate review. ***In re Elaina M.***, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *8 (Tenn. Ct. App. Oct. 25, 2011). In this case, however, the trial court's order does not indicate the trial court considered any of the applicable factors in deciding to modify the parenting schedule. In fact, the trial court's order makes no finding that a modification is in the child's best interest. Instead, the trial court finds that a material change in circumstances has been proven and simply modifies the parenting plan to allow equal time for both parents.

It is well settled that, in bench trials like the one in this case, courts must make findings of fact and conclusions of law to support their rulings. Rule 52.01 of the Tennessee Rules of Civil Procedure provides, in pertinent part:

> In all actions tried upon the facts without a jury, the court shall find the facts specially and shall state separately its conclusions of law and direct the entry of the appropriate judgment. The findings of a master, to the extent that the court adopts them, shall be considered as the findings of the court. If an opinion or memorandum of decision is filed, it will be sufficient if the findings of fact and conclusions of law appear therein.

***Id***. Prior to July 1, 2009, trial courts were only required to make specific findings of fact and conclusions of law "upon request made by any party prior to the entry of judgment." *See* ***Poole v. Union Planters Bank N.A.***, No. W2009-01507-COA-R3-CV, 337 S.W.3d 771, 791 (Tenn. Ct. App. 2010) (noting the amendment). However, the current version of Rule 52.01 requires the court to make these findings regardless of a request by either party. ***Id.***

This Court has previously held that the General Assembly's decision to require findings of fact and conclusions of law is "not a mere technicality." ***In re K.H.***, No. W2008-01144-COA-R3-PT, 2009 WL 1362314, at *8 (Tenn. Ct. App. May 15, 2009). Instead, the requirement serves the important purpose of "facilitat[ing] appellate review and promot[ing] the just and speedy resolution of appeals." ***Id***.; ***White v. Moody***, 171 S.W.3d 187, 191 (Tenn. Ct. App. 2004); ***Bruce v. Bruce***, 801 S.W.2d 102, 104 (Tenn. Ct .App. 1990). "Without such findings and conclusions, this court is left to wonder on what basis the court reached its ultimate decision." ***In re K.H.***, 2009 WL 1362314, at *8 (quoting ***In re M.E.W***., No. M2003-01739-COA-R3-PT, 2004 WL 865840, at *19 (Tenn. Ct. App. April 21, 2004)). Moreover, "findings of fact are particularly important in cases involving the custody and parenting schedule of children, as these determinations 'often hinge on subtle factors, including the

---

[2](...continued)

-16-

parents' demeanor and credibility during [the] proceedings.'" *In re Connor S.L.*, No. W2012-00587-COA-R3-JV, 2012 WL 5462839, at \*4 (Tenn. Ct. App. Nov.8, 2012) (quoting *Hyde v. Bradley*, No. M2009-02117-COA-R3-JV, 2010 WL 4024905, at \*3 (Tenn .Ct. App. Oct. 12, 2010)). Normally, appellate courts are reluctant to second-guess a trial court's decision with regard to a parenting schedule, but without findings of fact, we cannot discern the basis for the trial court's decision, "and we are unable to afford appropriate deference to the trial court's decision." *Connor*, 2012 WL 5462839, at \*4.

Generally, the appropriate remedy when a trial court fails to make appropriate findings of fact and conclusions of law pursuant to Rule 52.01 is to "vacate the trial court's judgment and remand the cause to the trial court for written findings of fact and conclusions of law." *Lake v. Haynes*, No. W2010-00294-COA-R3-CV, 2011 WL 2361563, at \*1 (Tenn. Ct. App. June 9, 2011). In this case the trial court not only failed to address any of the relevant factors as to whether modification of the parenting plan was in the child's best interests, but the trial court also failed to make the necessary finding that modification was in the child's best interest. This Court was recently presented with a similar issue in *Pandey v. Shrivastava*, No. W2012-00059-COA-R3-CV, 2013 WL 657799 (Tenn. Ct. App. Feb. 22, 2013). The issue in *Pandey* involved an initial custody determination in which the trial court was required to make a determination of the child's best interest. *Id.* at \*4. The trial court, however, failed to make any findings regarding the best interest of the child. *Id.* The Court of Appeals remanded to the trial court for entry of an order that appropriately considered the child's best interest and that made sufficient factual findings to support that decision. *Id.* at \*6. In explaining its decision to remand to the trial court, the Court stated:

> On occasion, when a trial judge fails to make findings of fact and conclusions of law, the appellate court "may 'soldier on' when the case involves only a clear legal issue, or when the court's decision is 'readily ascertainable.' " *Hanson v. J.C. Hobbs Co., Inc.*, No. W2011-02523-COA-R3-CV, 2012 WL 5873582, at \*10 (Tenn. Ct. App. Nov.21, 2012) (quoting *Simpson v. Fowler*, No. W2011-02112-COA-R3-CV, 2012 WL 3675321, at \*4 (Tenn. Ct. App. Aug. 28, 2012)). However, that is not the case here. Determining the best interest of a child is a "fact-intensive issue," *Hardin*,[No. W2012-00273-COA-R3-CV,] 2012 WL 6727533, at \*5 [(Tenn. Ct. App. Dec. 27, 2012)], and the basis of the trial court's decision in this case is not readily ascertainable.

\* \* \*

Although trial courts have broad discretion in fashioning a parenting arrangement, the decision "must be based on the proof at trial and the applicable principles of law." ***Morris***, [No. W2010-00293-COA-R3-CV,] 2011 WL 398044, at *8 [(Tenn. Ct. App. Feb. 8, 2011)]. We cannot discern, from the trial court's order, what "proof at trial" affected the trial court's ruling, nor can we tell whether the trial court applied the appropriate legal analysis in making its decision. We do not know what factors, if any, the trial court considered in . . . fashioning the parenting schedule.

***Pandey***, 2013 WL 657799, at *5–*6. Likewise in this case, the trial court failed to articulate any factors it considered in making the decision to modify the parenting schedule, nor did the trial court make an explicit finding that modification was in the child's best interest. Without these findings, "we are unable to conduct a meaningful appellate review of the trial court's decision." ***Id.*** at *6. Accordingly, we remand to the trial court for entry of an order fully compliant with Rule 52.01. The trial court's most recent ruling with regard to the parenting schedule, giving both parents equal visitation with the child, shall remain in place pending further orders of the trial court.

### C. Attorney Fees

Finally, Mother seeks her attorney fees for having defended this appeal pursuant to Tennessee Code Annotated Section 36-5-103(c), which states:

> The plaintiff spouse may recover from the defendant spouse, and the spouse or other person to whom the custody of the child, or children, is awarded may recover from the other spouse reasonable attorney fees incurred in enforcing any decree for alimony and/or child support, or in regard to any suit or action concerning the adjudication of the custody or the change of custody of any child, or children, of the parties, both upon the original divorce hearing and at any subsequent hearing, which fees may be fixed and allowed by the court, before whom such action or proceeding is pending, in the discretion of such court.

Tennessee courts have previously awarded attorney fees to a party who prevailed in disputes regarding the custody or parenting schedule of a minor child. ***See, e.g.***, ***Keyt v. Keyt***, 244 S.W.3d 321 (Tenn. 2007); ***Marlow v. Parkinson***, 236 S.W.3d 744 (Tenn. Ct. App. 2007); *see also* ***In re Elaina M.***, No. M2010-01880-COA-R3-JV, 2011 WL 5071901, at *12 (Tenn.

Ct. App. Oct. 25, 2011) ("Only the prevailing party is entitled to recover attorney's fees.") (citing *In re Landon A. F.*, No. M2010-01180-COA-R3-JV, 2011 WL 1630945, (Tenn. Ct. App. April 26, 2011). The central issue in this case was the modification of the trial court's prior parenting schedule to award Mother equal visitation with the child. Because the trial court failed to make any findings supporting the modification, we have vacated the trial court's order modifying the schedule. Thus, Mother has not prevailed on the central issue in this case. Accordingly, we decline to award her attorney fees on appeal.

## IV. Conclusion

Based on the foregoing, we affirm in part, and remand to the Chancery Court of Montgomery County for all further proceedings as may be necessary and are consistent with this opinion. Costs of this appeal are taxed one-half to Appellant Willard Harrison Iman, Jr., and his surety, and one-half to Appellee Megan Blanchfield Iman, for all of which execution may issue if necessary.

_____
J. STEVEN STAFFORD, JUDGE